Welch, J.
The transaction between Trotter and Jenkins, Bro. & Chipman took place in Tennessee, and must doubtless be governed by the law of that state. Whether under that law the transaction was authorized, so as to become binding upon Frank, it seems to us we need not inquire. Assuming that it was unauthorized, and that Frank might, at his election, either disaffirm or ratify the transaction, we are quite satisfied that his action, for the price of the cotton, against Trotter, ought, under the circumstances, to be held, as between him and Jenkins, Bro. & Chipman, to be a ratification. It is well-settled law that *604 .an action by the owner for the price or purchase money of •goods sold by an unauthorized agent, may be regarded as, .and prima facie is, a ratification of the sale. The transaction in question was not, strictly speaking, a sale of the -cotton, but it was in the nature of a sale, and should he subject to the same rules of law iu regard to acts of ratifi•cation aud disaffirmance by the owner. It was a shipment •of the cotton for sale on commission, with an advance of part of the purchase money. It was more than a pledge. It was a pledge with an irrevocable power to sell and reimburse the money advanced and the freight and commission. No reason can be shown why in such a case, equally as iu ■case of a simple sale, the well-known rule of law in regard to ratifications should not apply. The reason which underlies the rule is in both cases the same, namely, that a third person has an interest in the property, which it is in the power of the owner either to defeat or to ratify at his 'option. Such third person, as it were, is at the mercy of the owner. Justice, therefore, requires that he should make his election at once, and adhere to it when fully aud fairly made. If the owner repudiates the sale, the purchaser ■must seek his remedy against the unauthorized agent. If the sale is ratified by the owner, the purchaser must pretermit his remedies against the agent, and assert his right to the property. The latter is the coarse pursued by Jenkins, Bro. & Chipman in the present case, and we think that under the circumstances they were justified in so doing. They were merchants of Boston, where this exceptional and hard rule of law, which allows the owner to dis-affirm such a disposition of property by his factor, did not exist. Being made aware, as we may well suppose, by the service of the process of garnishment upon them, that Frank claimed to recover from Trotter the seven thousand •dollars advanced by them upon the cotton, they wont immediately to Cincinnati, where a like law as in Massachusetts prevails, and there brought their action for the cotton in question. Whether at the time of bringing their action *605 they had actual knowledge of the pendency of the Cincinnati suit by Erank, against Trotter, for the price of the cotton, or of the replevin suit against Shinkle, does not appear. If we are to presume a knowledge of both these suits by Jenkins, Bro. & Chipman, how did they stand, and what were their rights ? By his replevin suit against Shinkle, Erank apparently disaffirmed the transaction, and by his-action against Trotter he apparently ratified it. Apparently, then, he claimed both the cotton and the seven thousand dollars advanced upon it. Had Jenkins, Bro. &• Chipman brought their action against Trotter for the money advanced on the cotton, and for the freight and commission,, it would have been in the power of Erank to defeat the action, by affirming the sale, equally as it would have been in his power to defeat any action by which they might assert their right to the cotton. If either of the actions by Erank was brought under a mistake, it was his duty, under the circumstances, promptly to dismiss or abandon it, upon discovery of the mistake. No such mistake or abandon ment is shown. On the contrary, Erank persistently, and up to the date of the trial, maintained at least one of bis-actions for the price of the goods, and thus seemed to claim both the cotton and its value. Eailing thus to make-an election, it seems to me that in equity the other party might well elect for him. Had he, when the replevin action was commenced against him, promptly informed Jenkins, Bro. & Chipman that he commenced the action, or actions, for the price of the cotton by mistake, or that he would dismiss or abandon them, no doubt they would have been by law remitted to their action against Trotter,, provided they had not been misled to their prejudice by the actions of Erank. Under the circumstances, we think that Erank is estopped, as between him and Jenkins, Bro. & Chipman, from denying that he ratified the agency of Trotter in shipping the cotton to them as he did.
But it is claimed that Jenkins, Bro. & Chipman are estopped from claiming title to the cotton, by the judgment in favor of Erank in his action of replevin against. *606 ■Shinkle. We apprehend there are two good answers to this claim. The first answer is, that the title to the cotton was not- necessarily drawn in question in that action, but merely the right to its possession. The second answer is, that there was not that privity between Shinkle, the master of the steamboat, and Jenkins, Bro. & Chipman, required in cases of estoppel. The simple relation of carrier and •consignee is not of itself and necessarily sufficient for that purpose. There is no authority for any such broad principle of law. Jenkins, Bro. & Chipman were no parties to the suit, and did not in any manner participate in its defense, or receive any notice or request to do so. Indeed, it does not affirmatively appear that they had notice of the pendency of the suit. Without stopping, therefore, to inquire whether counsel are right in alleging that there is a further answer to this claim of estoppel, in the alleged fact that Shinkle was not the agent of Jenkins, Bro. & Chip-man, but was the agent of the Great Eastern Dispatch Company, we are satisfied, for the two reasons already assigned, that the judgment against Shinkle worked no •estoppel against Jenkins, Bro. & Chipman.
We therefore see no error in the judgment below, and it must be affirmed.

Judgment affirmed.